# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen Pinto, :
                  Petitioner :
  :
          v. : No. 739 C.D. 2018
  : SUBMITTED: September 28, 2018
Workers' Compensation Appeal :
Board (Main Line Healthcare), :
             Respondent :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: February 22, 2019**

Karen Pinto (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (the WCAB), which reversed Workers' Compensation Judge (WCJ) Sarah Makin's order granting Claimant's review and reinstatement petitions and denying Main Line Healthcare's (Employer) petition for termination. The dispute before this Court centers around the review petition and WCJ Makin's decision and order, which states as a conclusion of law, in relevant part, as follows: "Claimant has sustained her burden of proving that as a result of her work injury, [she] has sustained disc herniations at C5-6 and C6-7 causing a combination of spinal cord and nerve compression for which she required surgery and for [sic] which she disabled her [sic] from her employment effective July 13, 2016." (WCJ Makin's Decision and Order at 7, Conclusion of Law "C.L." No. 2; Reproduced Record "R.R." at 444.) Claimant argues that the addition of the cervical spine injuries

(hereinafter, "cervical herniations") was a permitted "clarification" of the injury description in WCJ Joseph Hagan's earlier award of benefits. Employer argues that the addition of cervical herniations, which were known to Claimant and her medical providers and actually litigated before WCJ Hagan, was barred by the doctrine of res judicata. For the reasons stated below, we agree with Employer and therefore affirm the WCAB.[1]

In April 2013, Claimant sustained a work injury when she fell off a rolling chair. In August 2013, Employer issued a notice of temporary compensation payable describing Claimant's injury as "cervical/lumbar/thoracic muscle strains." In September 2013, Claimant filed a claim petition alleging that she sustained a work injury on April 23, 2013 that caused total disability as of that date.[2] Employer filed an answer denying all allegations. In October 2013, Employer issued a notice stopping temporary compensation and a notice of compensation denial, the latter of which stated that Employer decided not to accept liability and that Claimant did not have a wage loss and was found fully recovered and able to work full-duty without restrictions.

The parties litigated the claim petition, and WCJ Hagan circulated a decision and order in June 2015. (WCJ Hagan's Decision and Order; R.R. at 72-81.) Because Claimant had returned to work, the parties agreed to a limited claim and proceeded on medical records and reports. (*Id.* at 76, Finding of Fact, "F.F." No. 10; R.R. at 76.) Claimant testified about the work incident, her injuries, and various periods of time when she was out of work or was back at work subject to limitations.

---

[1] Although the parties disagree on how to characterize much of the history of the case, the Court has reviewed the WCAB's recitation of the facts and finds that it is supported by the record. Additional pertinent details necessary to resolve the issues raised by Claimant are noted.

[2] The full record of the proceedings before WCJ Hagan, including the claim petition, is not before the Court. However, portions used as exhibits in the proceeding before WCJ Makin are present in the reproduced record and agency record.

(*Id.* at 3, F.F. No. 5; R.R. at 74-75.) An MRI of Claimant's thoracic spine performed in June 2013 found, among other things, "a bulging disc at C3-4; *right paracentral disc herniation at C6-7*; tiny disc protrusions at C7-T1; central disc herniation at T4-5; tiny disc protrusions at C7-T1; central disc herniation at T4-5; tiny disc protrusion at T5-6; and a left paracentral disc protrusion at T9-10." (*Id.* at 6, F.F. No. 10.f; R.R. at 77.) Claimant's treating physician, Dr. Christopher Mehallo, described the MRI results as revealing "'a fairly sizable central disc herniation' at T4-5" and later listed a diagnosis of "thoracic pain with disc herniation." (*Id.* at 6, F.F. No. 10.g; R.R. at 77.)

In August 2015, Claimant began seeing a new treating physician, Dr. William Ingram. With respect to Dr. Ingram's treatment records, WCJ Hagan found as follows:

> [Dr. Ingram] describes detailed clinical examination, and his review of the previous diagnostic studies. He diagnosed post-traumatic cervical, thoracic and lumbar sprains/strains, cervical and lumbar radiculopathy, with multiple level disc abnormalities, and a peripheral median neuropathy—all as a direct result of the work related fall of April 23, 2013.

(*Id.* at 6, F.F. No. 10.i; R.R. at 77.) The August 2013 MRI "revealed *a herniated disc at C3-4 in contact with the cord*; a C4-5 disc bulge in contact with the cord; *a C5-6 herniated disc producing 'mass effect on the cord'; and a C6-7 broad based disc herniation producing 'moderate to severe mass effect on the cord*.'" (*Id.*, F.F. No. 10.j (emphasis added)). An upper extremity EMG performed in September 2013 "revealed evidence of C6 and C7 radiculopathies, as well as bilateral median nerve entrapment at both wrists, consistent with 'double crush syndrome[.]'" (*Id.* at 6, F.F. No. 10.k; R.R. at 78.) WCJ Hagan summarized the defense medical examination by Dr. Neil Kahanovitz, stating that "Dr. Kahanovitz diagnosed a cervical, thoracic and

3

lumbar sprain which were each fully resolved by the date of the examination." (*Id.* at 7, F.F. No. 11; R.R. at 78.)

WCJ Hagan granted the claim petition, concluding that Claimant proved her entitlement to workers' compensation benefits, finding total or partial disability for periods after April 2013. (*Id.* at 10; R.R. 72-81.) Despite summarizing the medical evidence, WCJ Hagan did not make *any* specific findings of fact regarding credibility or the nature of the work injury. WCJ Hagan also did not explain why he had incorporated into the injury description some, but not all, of the injuries reported by Claimant and indicated in the reports and imaging. WCJ Hagan ordered that Employer "shall pay for all medical treatment that is reasonable [sic] necessary and related to Claimant's work injury, which shall be defined to include lumbar strain/sprain and lumbosacral radiculitis from the work-related incident." (*Id.* at 10; R.R. at 81.)

Claimant did not appeal WCJ Hagan's order to the WCAB. Employer appealed WCJ Hagan's decision and order insofar as it found Claimant eligible for benefits after May 2014, even though WCJ Hagan acknowledged that the claim was limited. The parties entered into a stipulation of facts to resolve Employer's appeal, with Claimant reserving the right to file a reinstatement petition should circumstances dictate and Employer reserving the right to file a termination petition should circumstances dictate. In August 2015, the WCAB approved the stipulation of facts, modified WCJ Hagan's decision and order to conform to the stipulation, and affirmed in all other respects *pro forma*. (WCAB Field Office Orders, R.R. at 87.)

As the litigation proceeded, Claimant saw doctors about her neck problems, and was eventually referred to Dr. Andrew Freese for surgical consultation. Dr. Freese recommended neck surgery, which was performed in June 2016. Thereafter, Claimant was out of work for a period and then returned to a part-

4

time lighter-duty job in September 2016. (Notes of Testimony "N.T." 11/9/16 26 at 13-14; R.R. at 62-63.)

In September 2015, Claimant filed her review petition, stating "Claimant has been informed that workers' compensation benefits will not be reinstated following a planned surgery [the neck surgery], because the employer believes the WCJ's decision is 'out of date'" and seeking review of WCJ Hagan's description of the work injury "to the extent necessary … based upon 'new' medical documentation." (Petition, R.R. at 1.) Employer denied the allegations and averred that any effort to expand the description of the work injury beyond that stated by WCJ Hagan's order was a collateral attack and was barred by the doctrines of res judicata and collateral estoppel.

WCJ Makin was assigned the review petition. Employer requested that the review petition be dismissed based on res judicata and because Claimant had not reserved the right to review. The parties requested that WCJ Makin resolve the res judicata issue before the parties moved forward with the merits of Claimant's review petition. By interlocutory decision and order circulated in December 2015, WCJ Makin denied Employer's motion to dismiss, concluding that Claimant's review petition was not barred. (Interlocutory Order and Decision, R.R. at 37-39.)

In July 2016, Claimant filed a reinstatement petition alleging a worsening of her condition as of June 2016. Employer filed an answer denying the allegations in the reinstatement petition. During a hearing on both petitions, Claimant's counsel stated that through her review petition, Claimant was seeking "clarification of what the injury is." (N.T. 2/3/16 at 7; R.R. at 46). Both parties presented evidence concerning the condition and history of Claimant's cervical spine, including the testimony of Claimant and expert depositions.

By decision and order circulated in March 2017, WCJ Makin granted Claimant's review and reinstatement petitions and denied Employer's motion to

dismiss. (WCJ Makin's Decision and Order; R.R. at 438-445.) WCJ Makin credited the testimony of Claimant, found Claimant's physician's deposition testimony more credible than Employer's expert, and found that Claimant met her burden of proving that she sustained work-related disc herniations at C5-6 and C6-7 causing a combination of spinal cord and nerve compression. (*Id.* at 6, F.F. Nos. 16-18; R.R. at 443.) WCJ Makin concluded that Claimant proved she required surgery for her cervical injury which disabled her from employment effective July 13, 2016.[3] (*Id.* at 7, C.L. No. 2; R.R. at 444.) WCJ Makin did not reconcile her decision and order with WCJ Hagan's decision and order.

Employer appealed WCJ Makin's decision and order to the WCAB, arguing that WCJ Makin erred by failing to dismiss Claimant's review and reinstatement petitions as barred by res judicata and collateral estoppel. Claimant responded that she was not seeking to expand the description of her work injury, but was seeking to clarify it. The WCAB reversed WCJ Makin's decision and order, both with respect to Claimant's review and reinstatement petitions and Employer's motion to dismiss Claimant's petitions. The WCAB concluded that there is no mechanism for one WCJ to review an earlier WCJ's award for material mistakes, and that any matter concerning the merits of the original award must be addressed through the appeal process, and cannot be modified or corrected by way of a review petition under Section 413(a) of the Workers' Compensation Act (Act).[4]

Central to the arguments raised in this appeal—the "crux of the entire litigation," as Claimant puts it—is, as stated earlier, whether inclusion of cervical herniations in the injury description is a mere clarification of WCJ Hagan's injury description. We have held that under certain circumstances clarification of a

---

[3] In her decision and order, WCJ Makin frequently and specifically referred to July 13, 2016, even though the evidence shows that the neck surgery occurred on June 13, 2016.

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771.

6

previous WCJ's decision by a review petition would be permissible under Section 413(a) of the Act. *Knouse v. Workers' Comp. Appeal Bd. (G.O.D., Inc.)*, 886 A.2d 329, 336 (Pa. Cmwlth. 2005). However, if the doctrine of res judicata applies, a change to the decision on the merits of a case is not permitted, even when the original decision was mistaken. *Byfield v. Workers' Comp. Appeal Bd. (Phila. Hous. Auth.)*, 143 A.3d 1063, 1067 (Pa. Cmwlth. 2016).

In *Knouse*, this Court declined to apply res judicata and stated that a claimant might obtain clarification of an injury description by a review petition brought under Section 413(a) of the Act. Although our decision in *Knouse* is heavily dependent on the specific facts and procedural history of that case, examining it provides valuable insight. In *Knouse*, this Court made a careful examination of the decisions and orders previously entered in the case, all by the same WCJ from 1998 to 2004. 886 A.2d at 330-334. In 1998, the WCJ awarded benefits describing the injury as a sprained low back, but rejected evidence of a lumbar herniation. *Id.* at 331. In a 2002 decision on a reinstatement petition, the WCJ found that the claimant's condition had worsened and that the lumbar disc strain "would best be described as an annular disruption," which was affirmed by the WCAB. *Id.* at 332. In 2004, the WCJ found that the "sprained low back…included" the annular disruption. *Id.* at 334 (quoting the WCJ's 2004 decision).

A panel of this Court found that the WCJ had *"merely clarified* what already had been litigated." *Id.* at 335 (emphasis in original). The Court explained that the WCAB, in reversing the WCJ's 2004 decision and order, had mistaken the *annular disruption*, which the claimant's second doctor testified was *included* in the lumbar disc strain originally found in 1998, for a *herniation*, which the WCJ had specifically rejected in his 1998 decision. The essential factor in *Knouse* seems to have been that the clarification was an explanation that a previously found injury

7

(low back strain) included an annular disruption, rather than the finding of another, unrelated injury.

Conversely, res judicata, which this Court declined to apply in *Knouse*, has been explained as follows: "The doctrine of res judicata encompasses two related, yet distinct, principles: technical res judicata and collateral estoppel." *Maranc v. Workers' Comp. Appeal Bd. (Bienenfeld)*, 751 A.2d 1196, 1199 (Pa. Cmwlth. 2000). The purpose of the doctrine is to "prevent[] the relitigation of claims and issues in subsequent proceedings." *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001).

Under the principle of technical res judicata, often referred to as claim preclusion, "when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded." *Id.* In order for technical res judicata to apply, there must be: "(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Id.* at 366. Technical res judicata may be applied to bar "claims that were actually litigated as well as those matters that should have been litigated." *Id.* at 365-366. "Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings." *Id.* at 366.

The principle of collateral estoppel, often referred to as issue preclusion, "is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated." *Pucci v. Workers' Comp. Appeal Bd. (Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998). Collateral estoppel applies where:

> (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is

asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment.

*Id.* at 648.

An unreported case with facts that are strongly analogous to the instant one, though not binding,[5] is instructive as to how we have applied technical res judicata in a like situation. In *Corbett v. Workers' Compensation Appeal Board (Port Authority of Allegheny County)*, (Pa. Cmwlth., No. 2716 C.D. 2010, filed August 24, 2011), a claim petition was litigated and a WCJ issued an order stating, in relevant part, that "[t]he claimant suffered a work injury on May 16, 2005 to his left shoulder, left side of his neck, left leg, and left hip." *Id.*, slip op. at 1 (quoting the WCJ's order). The employer appealed the award on attorneys' fees, *id.*, slip op. at 2, but the claimant did not appeal the omission of a back injury from the injury description. The claimant subsequently filed a review petition alleging that the work injury description should be amended to add a low back injury. *Id.* This Court differentiated *Corbett* from cases where the review petition process was used to correct "mechanical errors in the application" of the Act or "mathematical errors" in the computation of awards[6]:

> Rather, the issue of *whether or not Claimant's back injury should have been included in the description of the work injury goes to the merits of the case, not the satisfaction of the award.* The injury description is relevant to Claimant's substantive right to benefits . . . . The back injury issue was raised and fully litigated in the proceedings on Claimant's Claim Petition. Claimant testified he experienced low

---

[5] *See* Section 414 of the Internal Operating Procedures of the Commonwealth Court. 210 Pa.Code § 69.414.

[6] *See Drozd v. Workmen's Comp. Appeal Bd. (The Lion, Inc.)*, 485 A.2d 96 (Pa. Cmwlth. 1984); *Fowler v. Workmen's Comp. Appeal Bd.*, 393 A.2d 1300 (Pa. Cmwlth. 1978).

9

back pain following the work injury and that he continues to seek medical care for his low back. Dr. Lindenbaum attributed Claimant's low back injury to the work-related cause. Employer's expert opined that the low back injury was not related to the work injury. Despite the fact that Claimant's medical witness was found to be credible, the back injury was not included in WCJ Oliver's award. Although Claimant prevailed on the Claim Petition in the final order issued by WCJ Oliver, Claimant lost on the issue of the low back injury. *Even if the omission of the low back injury was a mistake* on the part of WCJ Oliver, the mistake goes to the merits of the case, not to the satisfaction of the award, and *should have been appealed*.

*Id.*, slip op. at 6-7 (emphasis added). Similar reasoning was applied by this Court in *Byfield*, a case involving the attempt to obtain costs and attorney's fees by review petition: "even if the absence of an award of attorney's fees was inadvertent on the [WCAB]'s part, the mistake goes to the merits of the case, not to the satisfaction of the award, and it cannot be corrected by way of a review petition." 143 A.3d at 1067.

The Court must conclude that the relief sought by Claimant—the inclusion of cervical herniation in her injury description—is a substantive change rather than a clarification and that the elements of technical res judicata are met. Before WCJ Hagan, Claimant asserted an injury to the cervical spine and submitted medical reports and imaging of cervical herniations. WCJ Hagan summarized this evidence, as well as Employer's evidence, in findings of fact, but did not make any specific finding as to which evidence he accepted and which he rejected. Of importance here, he omitted cervical herniations from the injury description, without even cursory reasoning as to why.[7] These omissions are not small—Claimant now

---

[7] Section 422 of the Act (relating to reasoned decisions) provides in relevant part as follows:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based

10

asserts that cervical herniations are why she cannot work and is entitled to benefits. Even if, as Claimant urges, the evidence presented to WCJ Hagan was adequate to support a determination that Claimant suffered a work injury of which cervical herniations were a part, he did not include them in describing her injury. The omission, if a mistake, would have properly been brought in an appeal of WCJ Hagan's decision and order.

Further, the Court does not find persuasive Claimant's various arguments that WCJ Hagan's use of the word "include," in the context of his order, can be interpreted to mean that he implicitly found Claimant's cervical herniation to be part of her work injury. The relevant phrasing of WCJ Hagan's order is *not* that Claimant's work injury "includes" other injuries of a "greater group," but that the "work injury . . . *shall be defined* to include *lumbar strain/sprain and lumbosacral radiculitis* from the work related incident."[8] (WCJ Hagan's Decision and Order at 10; R.R. at 81) (emphasis added).

Claimant's assertion that she lacked standing to appeal WCJ Hagan's order because she prevailed on her claim is unpersuasive. Pursuant to Section 702

---

> upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. § 834.

[8] The Court declines Claimant's invitation to wander into the weeds of the dictionary definition of "include." (*See* Claimant's Br. at 16.) The word "include" must be read in context, as an infinitive verb ("to include") after the future passive verb "shall be defined" and before the specific injuries listed.

The Court also declines to apply the rules of statutory construction for a purpose they were not written to address (i.e., construing administrative adjudications). (*See* Claimant's Br. at 16.) The Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501 – 1991, applies to statutes and other public documents which refer to and incorporate the Rules. 1 Pa.C.S. § 1502 (relating to application). Claimant does not cite—and research does not disclose—authority to apply them to the current situation.

of the Administrative Agency Law, "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom . . . ." 2 Pa.C.S. §702. A determination of whether an individual is aggrieved and thus has standing to appeal is made on a case-by-case basis. *Chiro-Med Review Co. v. Bureau of Workers' Comp*, 908 A.2d 980 (Pa. Cmwlth. 2006). Although generally a party that prevailed in a proceeding below is not an aggrieved party and, consequently, has no standing to appeal, *Almeida v. Workers' Compensation Appeal Board (Herman Goldner Co.)*, 844 A.2d 642, 644 (Pa. Cmwlth. 2004), "[c]ourts allow a party to appeal where the remedy awarded is claimed to be insufficient," *Byfield,* 143 A.3d at 1068.

Here, Claimant only prevailed in *part*, because WCJ Hagan's injury description did not include cervical herniations; thus, Claimant was aggrieved because she was not entitled to receive benefits or payment of medical expenses for that injury. Because Claimant was aggrieved and had standing to appeal WCJ Hagan's order, but failed to do so, WCJ Hagan's order is final and cannot be collaterally attacked by a subsequently filed review petition.

In light of the foregoing, we affirm the order of the WCAB.[9]

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[9] Because Claimant's arguments concerning the reinstatement petition rely upon the cervical herniations being added to the injury description, they are moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen Pinto,                                    :
                    Petitioner             :
                                    :
        v.                                        :    No. 739 C.D. 2018
                                    :
Workers' Compensation Appeal                    :
Board (Main Line Healthcare),                   :
               Respondent           :

# **O R D E R**

AND NOW, this 22ⁿᵈ day of February, 2019, the Order of the Workers'
Compensation Appeal Board is **AFFIRMED**.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge